# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STEPHAN JULIAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 14-cv-7163 |
| v. | ) |
| | ) Judge Robert M. Dow, Jr. |
| SGT. FRANKLIN D. PAZ, MAURICE | ) |
| ANDERSON, and THE CITY OF CHICAGO, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Stephan Julian brings this § 1983 false arrest action against Defendants Sergeant Franklin D. Paz, Maurice Anderson, and the City of Chicago alleging violations of the Fourth and Fourteenth Amendments. Currently before the Court is Plaintiff's motion for partial summary judgment [48]. For the reasons that follow, the Court denies Plaintiff's motion for partial summary judgment [48]. This case is set for further status hearing on March 21, 2017 at 9:00 a.m.

## I. Background

The following facts are drawn primarily from the parties' Local Rule 56.1 statements, [50], [58], [59], and [64]. On October 25, 2013, Defendants Paz and Anderson, police officers employed by the City of Chicago, were assisting the City of Chicago Department of Buildings with a "blitz" operation. [50, at ¶ 18.] The operation consisted of inspecting targeted properties on or near the 7300 block of South Dorchester Avenue and serving emergency vacate orders on certain houses deemed uninhabitable or unsafe, including the house at 7329 South Dorchester Avenue ("the 7329 House"). [*Id.* at ¶ 19.] Defendants contend that the operation took place in an extremely dangerous area of Chicago, on a block that is known for public violence and

shootings, including shootings of police officers. [59, at ¶ 1.] Defendants further contend that the 7329 House was a known gang and drug house where Defendants Paz and Anderson had previously executed a search warrant for illegal guns and that one resident of the house was a documented gang member who had previously been arrested on gun charges. [59, at ¶¶ 2–3.] Defendant Paz's duties included assisting and supervising the activities of the Chicago Police Department's Auto Theft Unit and Animal Control. [See 50, at ¶¶ 40–41; 58, at ¶¶ 40–41.] Defendant Paz's was also in charge of informing other police officers what work needed to be done. Defendant Anderson testified that Defendant Paz was the team leader that day and thus it was his responsibility to see to the preservation of the scene and the safety of his team. [59, at ¶ 23.]

On the date of the incident, Plaintiff's friend/ex-girlfriend, Carolyn Bridget, resided at 7329 South Dorchester Avenue. [50, at ¶ 22.] Plaintiff received a call from Bridget, who told him that the police were forcing her to gather her possession and leave her house so that they could board it up. [*Id.* at ¶ 23.] Plaintiff contends that when he arrived at the scene and attempted to enter the gate leading to the front yard of the 7329 House, an unidentified police officer told him that he could not enter. [*Id.* at ¶ 25.]

According to Defendants, Plaintiff approached Defendant Paz at the 7329 House, identified himself as an attorney, and said he represented Bridget. [59, at ¶ 9.] Defendant Paz testified that Plaintiff refused to provide identification, stood in Defendant Paz's way, and kept asking questions and demanding information. [*Id.* at ¶¶ 10–12.] Defendant Paz alleges that Plaintiff was preventing him from doing his job and conducting the investigation, so he asked Plaintiff to leave. [*Id.* at ¶¶ 12–13.] According to Defendant Paz, he told Plaintiff to "step away and allow us to continue the investigation" somewhere between four and ten times, but Plaintiff

continued moving toward Defendant Paz and the investigation, getting within one or two feet of Defendant Paz, pointing at his face, and yelling. [See 58, at ¶¶ 60–61.] Finally, Defendant Paz warned Plaintiff that if he did not move away, he would be arrested. [*Id.* at ¶ 20.] Plaintiff still refused to leave, so Defendant Paz ordered Defendant Anderson to arrest him for obstructing his investigation, and Defendant Anderson did so.

Plaintiff "denies that he engaged in any 'obstructive activities.'" [64, at ¶13.] The parties disagree about how long the incident between Plaintiff and Defendant Paz lasted, but it was somewhere between five and fifteen minutes. [50, at ¶ 53.] The entire blitz operation went on from about 8:30 a.m. until after 2:00 p.m. [50, at ¶ 53.] Plaintiff asserts that he remained on the public sideway during the incident, [50, at ¶ 26], but a neighbor of Bridget testified in his deposition that he saw Plaintiff coming out of the 7329 House. [59 Exhibit D, at 19:6–7].

The arrest report from the incident states that Plaintiff was observed loitering in an area where the police were conducting an investigation involving multiple gang houses. [50, at ¶ 57.] The report indicates that Plaintiff was asked to leave the area of the investigation but refused, causing the investigation to be interrupted. [*Id.*] The charges were terminated in Plaintiff's favor on November 21, 2013. On September 15, 2014, Plaintiff brought this § 1983 action against Defendants, alleging false arrest and violations of his Fourth and Fourteenth Amendment rights. Defendants raised the affirmative defense of qualified immunity, along with other affirmative defenses. [26.] On April 28, 2016, Plaintiff filed a motion for partial summary judgment, which is currently before the Court. [48.]

## II. Legal Standard

Summary judgment is proper where there is "no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of

material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In evaluating a motion for summary judgment, the Court will construe all facts in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party. *Bell v. Taylor*, 827 F.3d 699, 704 (7th Cir. 2016). However, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." *Thomas v. Christ Hosp. & Med. Ctr.*, 328 F.3d 890, 892 (7th Cir. 2003).

### III.  Analysis

Plaintiff argues that he is entitled to summary judgment because even accepting Defendant's version of the facts and assuming that he did ask Defendant Paz questions, yell, demand information, and refuse to leave the scene when ordered to do so, Defendants Paz and Anderson did not have probable cause to arrest him for obstructing a police officer. Defendants argue that a reasonable jury could conclude that Defendants Paz and Anderson had probable cause justifying the arrest.

The Fourth Amendment of the U.S. Constitution requires an arrest to be supported by probable cause. *Henry v. United States*, 361 U.S. 98, 100 (1959). "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that an offense has been committed." *Id.* at 102; *Qian v. Kautz*, 168 F.3d 949, 953 (7th Cir. 1999). The existence of probable cause is a mixed question of law and fact. *Ornelas v. United States*, 517 U.S. 690, 696 (1996). As long as the officer's belief is reasonable, it need not be correct. *Texas v. Brown*, 460 U.S. 730, 742 (1983).

The offense at issue in this case is obstructing a peace officer. Under Illinois law, "[a] person who knowingly resists or obstructs the performance by one known to the person to be a peace officer * * * of any authorized act within his or her official capacity commits a Class A misdemeanor." 720 ILCS 5/31-1(a). Illinois courts used to treat this statute as not applying to mere arguments with an officer, but rather only proscribing "some physical act which imposes an obstacle which may impeded, hinder, interrupt, prevent or delay the performance of the officer's duties, such as going limp, forcefully resisting arrest or physically aiding a third party to avoid arrest." *People v. Raby*, 240 N.E.2d 595, 599 (Ill. 1968). However, in *People v. Baskerville*, the Illinois Supreme Court clarified the meaning of "obstruct" in the context of this statute. 963 N.E.2d 898, 902–906 (Ill. 2012). The Court acknowledged that most cases specifically addressing obstructing a peace officer involved a physical act. However, the court noted that in *People v. Weathington*, 411 N.E.2d 862, 864 (Ill. 1980), it had left open the question of whether an activity falling between mere argument and a physical act could constitute obstructing a peace officer. The *Baskerville* court answered that question as follows:

> Although a person may commit obstruction of a peace officer by means of a physical act, this type of conduct is neither an essential element of nor the exclusive means of committing an obstruction. The legislative focus [of the statute] is on the tendency of the conduct to interpose an obstacle that impedes or hinders the officer in the performance of his authorized duties. That inquiry is for the trier of fact, based upon the facts and circumstances of each case.

963 N.E.2d at 905.

Applying that controlling law to the case at hand, the Court concludes that a reasonable factfinder could determine that Defendants Paz and Anderson had probable cause to arrest Plaintiff for obstructing a peace officer. When he was confronted by Plaintiff, Defendant Paz's authorized duties included coordinating various officials at the scene and assisting with the execution of an emergency vacate order, animal neglect investigation, and auto theft

5

investigation. Defendant Paz walked from the front yard to the back yard of the 7329 House at least five times to carry out tasks related to the investigation. During this time, Defendants contend that Plaintiff continued to yell at him and to get in the way. Defendant Paz testified that Plaintiff continuously would stand between Defendant Paz and the direction he was walking in, preventing him from doing his job. [59, at ¶¶ 11–12.] Defendant Paz further testified that while he was "carrying stuff out [from] the front and the back," Plaintiff would stand in front of him. [*Id.* at 24.] Additionally, Defendants allege that Plaintiff's interruptions were constant.

Viewing the facts in the light most favorable to Defendants, as the Court must, a reasonable factfinder could conclude that Plaintiff's actions cumulatively created an obstacle that impeded Defendant Paz in the performance of his duties during the investigation. Although simply asking a police officer questions does not provide probable cause for arrest, Defendants' version of the facts indicates that in addition to relentlessly peppering Defendant Paz with questions and yelling, Plaintiff also physically stood in his way. See *People v. Martinez*, 717 N.E.2d 535, 539 (Ill. App. Ct. 1999) (officer had probable cause to arrest defendant for obstructing a peace officer where defendant stood in between officers and people they were trying to question and did not obey officer's instructions to stay away, since defendant's actions impeded the officer's performance of his duties by making it so that he could not concentrate on questioning). Defendant Paz was responsible for tasks related to multiple aspects of the investigation, and Plaintiff's actions reasonably could have been so distracting that they hindered Defendant Paz's performance of his duties. In fact, Defendant Anderson testified that Defendant Paz's attention "was off of what the mission was that day and focused for an extended period of time on [Plaintiff]." [59, at ¶ 22.] Thus, a reasonable factfinder could conclude that Defendants Paz and Anderson had probable cause to arrest Plaintiff for obstructing a peace officer. See, *e.g.*,

6

*City of Chicago v. Meyer*, 253 N.E.2d 400, 402 (Ill. 1969) (defendant obstructed peace officer by refusing to obey order to disperse and attempting to continue disorderly conduct); *People v. Woidtke*, 587 N.E.2d 1101, 1110 (Ill. App. Ct. 1992) (defendant's intrusion into area of police investigation, his failure to stop when approached, and his supplying false information to the police and failure to identify himself provided probable cause for his arrest for obstructing a peace officer); *People v. Gordon*, 948 N.E.2d 282, 288 (Ill. App. Ct. 2011) (defendant obstructed a peace officer by refusing to leave the scene of a traffic stop after repeatedly being ordered to leave, acting irate, yelling profanities, and threatening the officers).

Plaintiff acknowledges that conduct that is a threat to an officer's safety can constitute obstruction, but he argues that his mere presence and approach of the officers at the scene could not cause a reasonable officer to fear for his safety. [49, at 9; 65, at 4.] Plaintiff contends that the alleged safety concerns presented by the neighborhood and the alleged criminal history surrounding the 7329 House are irrelevant because he did not curse, make any specific threats, or physically touch an officer. [65, at 4.] The Court disagrees. Given Defendants' allegations that the operation took place in an extremely dangerous area of Chicago, on a block that is known for public violence and shootings, including shootings of police officers, and that the 7329 House was a known gang and drug house, [59, at ¶¶ 1–2], Plaintiff's actions reasonably could have posed a safety concern for Defendant Paz. See *People v. Shenault*, 25 N.E.3d 703, 7011 (Ill. App. Ct. 2014) (taking officer safety into consideration when deciding whether defendant's repeated refusal to comply with officer's directions qualified as obstruction).

In *People v. Martinez*, the Illinois Appellate Court held that the officer had probable cause to arrest the defendant for obstructing a peace officer where the defendant stood in between officers and people they were trying to question and did not obey the officer's

7

instructions to stay away. 717 N.E.2d 535, 539 (Ill. App. Ct. 1999). The court focused on the officer's statement that the defendant's physical proximity caused him to be apprehensive about the security of his weapon and thus he could not concentrate on the questioning. *Id.* Similarly, in the case at hand, Defendant Anderson testified that it was Defendant Paz's responsibility, as the team leader that day, to look out for the safety of his team. [59, at ¶ 23.] Defendant Paz testified that Plaintiff was preventing him from doing his job. [*Id.* at ¶¶ 11–12.] After falsely stating that he was an attorney, Plaintiff refused to provide identification and told Defendant Paz, "You don't know who you're dealing with." [59, at ¶ 19.] Defendants contend that instead of obeying Defendant Paz's orders to step away, Plaintiff continued to move toward Defendant Paz, pointing at his face, and getting within one or two feet of Defendant Paz. Given the alleged safety concerns presented by the neighborhood, a factfinder could conclude that it was reasonable for Defendant Paz to be concerned for his safety and the safety of his team because of Plaintiff's actions and thus to be unable to concentrate on his authorized responsibilities.

Next, Plaintiff argues that he did not actually impede Defendant Paz from the performance of his authorized duties because Defendant Paz was capable of continuing and completing these duties despite Plaintiff's presence. [65, at 4.] Plaintiff relies on Defendant Anderson's testimony that Plaintiff was not physically obstructing Defendant Paz so that he could not move left, right, forward, or backward. Plaintiff also contends that his position is supported by Officer Burleigh's testimony that Plaintiff did not block Defendant Paz's path and Defendant Paz's admission that he was physically capable of walking around Plaintiff immediately before he ordered Defendant Anderson to arrest Plaintiff. However, Plaintiff seems to ignore Defendant Paz's testimony that Plaintiff was continuously standing in front of him and preventing him from doing his job, [59, at ¶¶ 11–12], and the Court must take all facts in the

8

light most favorable to the Defendants in resolving Plaintiff's motion for partial summary judgment. Further, even if Plaintiff was not making it physically impossible for Defendant Paz to move, a reasonable factfinder could conclude that Plaintiff created enough of an obstacle to distract Defendant Paz and hinder him in performing his duties. See *People v. Herrera*, 2016 WL 156043, at *15 (Ill. App. Ct. Jan. 12, 106) ("a rational trier of fact could reasonably conclude that defendant's refusal to put his dogs away [despite multiple orders by the officers] interfered with the officers' discharge of their duty because it impeded or hindered them in investigating the crime, as the dogs could be seen as anything from a significant distraction * * * to a potential threat to the officer's safety.").

The state court cases on which Plaintiff relies are distinguishable. In *Kies v. City of Aurora*, 156 F. Supp. 2d 970, 982–83 (N.D. Ill. 2001), the court held that where the plaintiff walked alongside and questioned the officer but did not stand in his way, she was not obstructing a peace officer. In contrast, viewing the facts in the light most favorable to Defendants, Plaintiff stood in front of Defendant Paz and continuously yelled and demanded information and overall made a bigger scene and created more of a distraction than the plaintiff in *Kies*. In *People v. Stoudt*, 555 N.E.2d 825, 827–28 (Ill. App. Ct. 1990), the defendant merely refused to leave the scene when ordered. Although Plaintiff in the case at hand also refused to leave the scene when ordered, his combined actions—continuously yelling at Defendant Paz, standing in his way, pointing a finger in his face, and walking towards Defendant Paz when asked to step away— amount to much more of an obstacle than the *Stoudt* defendant's actions. In *Collier v. Baker*, 1999 WL 543206, at *6 (N.D. Ill. July 23, 1999), the court addressed the defendants' motion for summary judgment and held that viewing the facts in the light most favorable to the plaintiff, the plaintiff had simply spoken to the officers in a raised voice, and thus her actions did not rise to

the level of physical resistance.[1]  Here, the Court must take the facts in the light most favorable to Defendants, and as previously discussed, Defendants allege that Plaintiff did much more than simply speak to Defendant Paz in a raised voice.  Moreover, *Kies*, *Stoudt*, and *Collier* are pre-*Baskerville* cases and thus relied on outdated case law indicating that obstruction requires a physical act.

Finally, Plaintiff cites *Skube v. Koester*, 120 F. Supp. 3d 825, 830 (C.D. Ill. 2015), for the proposition that "a short period of arguing and not complying with police orders does not constitute obstruction."  However, in that case, the plaintiff argued with the police officer for only twelve seconds. *Id.* at 831.  The *Skube* court also acknowledged that "prolonged refusals to comply with police orders can also constitute resistance or obstruction." *Id.* at 830.  Here, Defendants contend that the incident lasted around ten to fifteen minutes, [59, at ¶ 25], and that Defendant Paz asked Plaintiff to move away from the investigation somewhere between four and ten times.  A reasonable factfinder could conclude that this was a prolonged refusal to comply with police orders that constituted obstructing a peace officer.  See *People v. Synnott*, 811 N.E.2d 236, 237–38 (Ill. App. Ct. 2004) (defendant obstructed peace officer by repeatedly refusing to exit his car during a DUI stop, despite four police orders to do so).

In sum, a reasonable factfinder could conclude that Defendants Paz and Anderson had probable cause justifying Plaintiff's arrest for obstructing a peace officer, and Plaintiff is not entitled to partial summary judgment.

---

[1] The *Collier* court also acknowledged, however, defendants' allegations that the plaintiff used her body to physically block them and impeded their ability to carry out their duties.  1999 WL 543206, at *6.  The court noted that that if this was true, defendants may be entitled to qualified immunity, and accordingly postponed ruling on qualified immunity until the factual dispute was resolved at trial. *Id.*

## IV. Conclusion

For the reasons stated above, the Court denies Plaintiff's motion for partial summary judgment [48]. This case is set for further status hearing on March 21, 2017 at 9:00 a.m.

Dated: March 3, 2017

_____
Robert M. Dow, Jr.
United States District Judge